UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARLEY CASTRO, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ABM INDUSTRIES INCORPORATED, ET AL.,**<br><br>Defendants. | Case No.  14-cv-05359-YGR<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND**<br><br>Re: Dkt. No. 25 |

This putative class action generally stems from allegations that defendants required their janitorial employees to use personal cell phones for work-related purposes without reimbursement, in violation of California Labor Code section 2802 and California Business and Professions Code section 17200 *et seq*.  (Dkt. No. 1-2 ("Complaint") ¶¶ 3-5.)  The case was initially filed in the Superior Court of the State of California, County of Alameda.

Defendants removed the action to federal court, arguing this Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2).  (Dkt. No. 1.)  The parties are presently before the Court on plaintiffs' motion to remand.  (Dkt. No. 25 ("Mot.").)  Defendants oppose the motion.  (Dkt. No. 28 ("Oppo.").)

Having carefully considered the papers submitted,[1] the record in this case,[2] and good cause

---

[1] Pursuant to Federal Rule of Evidence 201(b)(2) and defendants' unopposed request for judicial notice (Dkt. No. 5) filed in conjunction with their notice of removal, the Court takes judicial notice of Table 1800 from the Consumer Expenditure Survey, U.S. Bureau of Labor Statistics ("BLS"), dated September 2014 (Dkt. No. 1-5).  *See Jackson v. Specialized Loan Servicing, LLC*, No. 14-CV-05981, 2014 WL 5514142, at *3 (C.D. Cal. Oct. 31, 2014) ("A court can consider evidence proffered by the parties in deciding a remand motion, including documents that can be judicially noticed."); *Floyd v. Astrue*, No. 04-CV-9433, 2008 WL 4184662, at *2 (C.D. Cal. Sept. 5, 2008) (taking judicial notice of Bureau of Labor Statistics data).  Although not subject to formal requests, the Court also takes judicial notice of similar data proffered by both parties pursuant to Federal Rule of Evidence 201(c)(1).  (Declaration of Hunter Pyle in Support of Plaintiffs' Reply in Support of Remand [Dkt. No. 31-1 ("Pyle Decl."), Ex. A ("Table 1202")]; Declaration of Theane Evangelis in Opposition to Remand [Dkt. No. 28-1 ("Evangelis Decl."),

shown, the Court hereby **GRANTS** plaintiffs' motion and **REMANDS** this action to the Superior Court.

## I. RELEVANT BACKGROUND

In the original complaint filed in state court on October 24, 2014, the proposed class includes "[a]ll individuals who worked for Defendants as nonexempt janitorial employees paid on an hourly basis in the State of California at any time during the Class Period," defined as the period beginning four years prior to the date the case was filed through "the present."[3] (Complaint ¶¶ 9, 22.) The complaint generally seeks relief for defendants' purported failure to reimburse employees for expenses associated with their work-related use of personal cell phones. (*Id*. ¶ 3.)

Defendants purportedly "employed thousands of nonexempt janitorial employees in California and have, at various points, paid those janitorial employees using weekly, bi-weekly, and/or semi-monthly pay periods." (Nedy Decl. ¶ 5.) Collectively, defendants assert those employees worked for a total of 796,338 semi-monthly pay periods (or their equivalent) between October 24, 2010 and October 24, 2014. (*Id*. ¶ 9.)

## II. LEGAL STANDARD

A defendant may remove a civil action filed in state court if the action could have originally been filed in federal court. 28 U.S.C. § 1441. A plaintiff may seek to have a case remanded to the state court from which it was removed if the district court lacks jurisdiction or if there is a defect in the removal procedure. 28 U.S.C. § 1447(c). The removal statutes are generally construed restrictively, so as to limit removal jurisdiction. *See Shamrock Oil & Gas*

---

Exs. A-E].)

[2] The Court previously vacated the hearing on this motion pursuant to Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78. (Dkt. No. 33.)

[3] Plaintiffs suggest the relevant time period continues "through the date of the final disposition of this action." (Mot. at 2.) To the contrary, defendants' calculations submitted to the Court were apparently premised upon the assumption that the relevant period ended October 24, 2014, when the initial complaint was filed. (*See, e.g.*, Declaration of Nedy Warren in Support of Defendants' Notice of Removal [Dkt. No. 6 ("Nedy Decl.")] ¶¶ 6-9.) Because defendants provided employee data and calculations only for the more restricted time period, the Court will limit its analysis to that interval. The Court will similarly not address the value of any prospective injunctive relief, to the extent it was sought in the state court complaint.

1 *Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941).

2 The district court must remand the case if it appears before final judgment that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). There is typically a "strong presumption" against finding removal jurisdiction. *Gaus v. Miles Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). Doubts as to removability are generally resolved in favor of remanding the case to state court. *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

CAFA provides that district courts have original jurisdiction over any class action in which: (1) the amount in controversy exceeds five million dollars, (2) any plaintiff class member is a citizen of a state different from any defendant, (3) the primary defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief, and (4) the number of plaintiffs in the class is at least 100. *See* 28 U.S.C. §§ 1332(d)(2), (d)(5). District courts also have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). Section 1332(a)'s amount-in-controversy requirement excludes only "interest and costs," so awardable attorneys' fees are included in the calculation. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007).

"[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006); *see also Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged."). In the CAFA context, the applicable burden of proof is by a preponderance of the evidence. *See Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013). "Conclusory allegations as to the amount in controversy are insufficient." *Matheson*, 319 F.3d at 1090-91.

3

However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

When measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (emphasis in original); *see Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005). In order to determine whether the removing party has met its burden, a court may consider the contents of the removal petition and summary-judgment-type evidence relevant to the amount in controversy at the time of the removal. *See Valdez*, 372 F.3d at 1117. A court may also consider supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n. 1 (9th Cir. 2002).

## III.  DISCUSSION

Defendants here bear the burden, by a preponderance of the evidence, of establishing the existence of removal jurisdiction. Defendants have failed to meet this burden as to CAFA's $5 million amount-in-controversy requirement. To the contrary, plaintiffs have persuasively argued—largely using the same data put forth by defendants, but employing more compelling interpretive methodologies—that the relevant amount in controversy is below CAFA's $5 million threshold based on the removed complaint.[4]

---

[4] Defendants argue the Court should consider plaintiffs' First Amended Complaint (Dkt. No. 21 ("FAC")), filed in this Court subsequent to removal, for purposes of determining whether removal was proper. The FAC adds a claim under the Private Attorneys General Act, Labor Code section 2698 *et seq.* ("PAGA"), which was not part of the state court complaint. Defendants argue relevant PAGA penalties alone exceed CAFA's $5 million jurisdictional threshold. However, defendants' calculations regarding PAGA penalties are not relevant at this juncture. For purposes of evaluating whether removal was proper, the Court looks to the operative complaint at the time the action was removed. *See Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006) ("[P]ost-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state

Defendants point to BLS regional data[5] regarding average cell phone plan costs. Those tables provide average costs per "consumer unit," which comprise on average 2.6 individuals. (*See* Dkt. No. 1-5 at 2.) The applicable average monthly cost is $78.25 per consumer unit. (Oppo. at 5; Dkt. No. 1-5 at 5.) Defendants propose 20 percent as a "reasonable estimate of the potential reimbursement rate"—assuming work-related use of cell phones was below that benchmark. (Oppo. at 6) While initially disputed by plaintiffs, they ultimately adopted the same percentage in their calculations. (Dkt. No. 31 ("Reply") at 3, 6, 7.) Thus, the Court will follow suit at this juncture. Both parties have also utilized an attorney's fees estimate of 25 percent of the total recovery.[6]

Because the available data relates to consumer units—not individuals—the Court must determine what percentage of the average cost per consumer unit is attributable to each putative class member.[7] The parties proffer two different approaches to this question:

---

court."); *see also Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013) ("For jurisdictional purposes, our inquiry is limited to examining the case 'as of the time it was filed in state court.'"); *Amaya v. Van Beek*, 513 F. App'x 652, 653 (9th Cir. 2013) ("[J]urisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments." (quoting *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998))); *Abada v. Charles Schwab & Co.*, 300 F.3d 1112, 1117 (9th Cir. 2002); *but see Caterpillar Inc. v. Lewis*, 519 U.S. 61, 64-75 (1996) (holding a trial court's erroneous denial of a motion for remand was not fatal to a final judgment where jurisdiction was proper at the time the judgment was entered, because "once a diversity case has been tried in federal court . . . considerations of finality, efficiency, and economy become overwhelming"). Defendants fail to cite any binding authority supporting their contention that in the absence of the unusual circumstances at issue in *Caterpillar*—where a final judgment had already issued after the Court earlier failed to remand an improperly removed case—a subsequent amendment to the complaint cures a removal that was improper ab initio. In *Williams*, for instance, removal was appropriate on the face of the removed state court complaint, and remained appropriate—but on different jurisdictional grounds—in light of an amended complaint subsequently filed in federal court. *See* 471 F.3d at 976-77. In that particular circumstance, remand was improper. Under the present circumstances, where the notice of removal was flawed on the date of its filing, claims added in a subsequent amended complaint cannot be considered.

[5] The data at issue relates to the "West region," which includes California. (Oppo. at 5.)

[6] Since the estimated total amount in controversy falls below CAFA's $5 million requirement even including the 25 percent fee calculation, the Court need not reach at this time the question of whether such prospective fees may be properly considered when determining removal jurisdiction.

[7] To the extent defendants suggest using the BLS "consumer unit" overall cost with *no* adjustment to account for expenditures attributable to each class member's cell service, the Court finds that approach unreasonable.

1       First, defendants suggest arbitrarily or, at least, without explanation (other than noting the
2   cell phone industry generally provides bundling discounts) that the Court should subtract only 35
3   percent from the total to adjust this figure. (*See* Oppo. at 8.) Conveniently, use of this particular
4   percentage rate results in a purported total amount in controversy of $5,066,700.53—a mere 1.316
5   percent above CAFA's minimum. The approach also assigns to each putative class member 65
6   percent of the costs attributable to a group of, on average, 2.6 individuals.
7       Plaintiffs, by contrast, propose a per capita approach, which assigns to each individual a
8   pro rata share of the total cost per consumer unit to reach the applicable figure per putative class
9   member (i.e., dividing the relevant consumer unit figure by 2.6). Utilizing plaintiffs' approach
10  and defendants' data, the average monthly cell phone service expenditure per consumer unit in the
11  West region ($78.25) adjusts to $30.10 per individual. Twenty percent of that figure—the agreed-
12  upon estimate of work-related usage—is $6.02 per month or $3.01 on a semi-monthly basis.
13  Multiplying that figure by 796,338—defendants' calculation of the number of semi-monthly pay
14  periods at issue—yields a total of $2,396,977.38. Adding 25 percent thereof for attorney's fees
15  ($599,244.35) results in a sum of $2,996,221.73, still well below the required $5 million.
16      Finally, and alternatively, defendants ask the Court to look instead to Federal
17  Communications Commission ("FCC") data providing wireless companies' average revenue per
18  subscriber. (Oppo. at 8-9.) That revenue average is $50.74 monthly, including an estimated 4
19  percent added to account for local utility taxes. (*See* Evangelis Decl., Ex. A at 19; Oppo. at 9.)
20  Performing the same calculation as above, 20 percent of the semi-monthly cost is $5.07.
21  Multiplied by 796,338, the total is $4,037,433.66 or $5,046,792.08 with 25 percent added for fees.
22      For present purposes, the Court finds the BLS regional data more useful. The FCC data
23  apparently includes revenue not attributable to subscribers—such as fees derived from "roamers in
24  a provider's market." (*See* Evangelis Decl., Ex. A at 19.) That difference alone could easily
25  account for the insubstantial $46,792.08—or 0.936 percent—amount by which this estimate
26  exceeds the $5 million threshold. Moreover, the Court finds plaintiffs' approach to using the BLS
27  data most reasonable because it seeks to accurately account for class members' shares of
28  household cell phone bills.

As an additional context for the analysis, plaintiffs suggest the Court consider the impact of subscriber income levels on their average monthly bills. Plaintiffs submit a BLS Consumer Expenditure Survey that is apparently not region-specific but rather estimates a U.S. consumer unit's annual expenditure on cell phone service based on income levels. (*See* Pyle Decl. Ex. A.) These figures show a substantial variance, from a mean of $441 for the lowest income group (below $5,000) to $1,349 for the highest ($70,000 and above). The overall mean of the survey is $913 annually or approximately $76.08 monthly. Plaintiffs suggest putative class members—as janitorial workers—fall into the $20,000-$29,999 bracket according to BLS data and therefore spend on average $607 annually or approximately $50.58 monthly. This determination rests on a number of assumptions, such as that the putative class members make, on average, the same as janitorial workers nationwide (i.e., there is no cost-of-living adjustment or consideration of employer-specific pay rates) and that income of *all* members of putative class members' applicable consumer units—who also contribute to the household income level—fall within the same income bracket. Because income levels are apparently correlated with annual cell phone service expenditures, the Court agrees that such data is relevant—to the extent it is used properly. However, the Court need not tackle this issue on the present record, where a reasonable interpretation of defendants' data suggests the amount in controversy is less than $5 million.

Thus, adopting plaintiffs' justified modification to defendants' methodology and proffered data, the Court finds that the relevant amount for jurisdictional purposes at the time of removal fell below CAFA's $5 million threshold. As a result, removal was improper and remand is warranted.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' Motion to Remand is **GRANTED**. This action is hereby **REMANDED** to the Superior Court of the State of California, County of Alameda.

This Order terminates Docket Number 25 and the Clerk of the Court shall close the file.

**IT IS SO ORDERED.**

Dated: April 2, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**